**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Proposed Lead Plaintiff*
*Paul Dellock and Proposed*
*Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| WILSON WAI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARQETA, INC., SIMON KHALAF, and MICHAEL MILOTICH, <br><br> Defendants. | Case No. 4:24-cv-08874-YGR <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION OF PAUL DELLOCK FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF THE RELATED ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: March 18, 2025 <br> Time: 2:00 p.m. <br> Courtroom 1, Fourth Floor <br> Judge: Hon. Yvonne Gonzalez Rogers |
| DAVID FORD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARQETA, INC., SIMON KHALAF, and MICHAEL MILOTICH, <br><br> Defendants. | Case No. 4:24-cv-08892-YGR <br><br> <u>CLASS ACTION</u> |

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
CASE NO. 4:24-CV-08874-YGR

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that at 2:00 p.m. on March 18, 2025, or on a date and at a time set by the Court, before the Honorable Yvonne Gonzalez Rogers, at the United States District Court for the Northern District of California, located at the Oakland Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California 94102, Paul Dellock, through his counsel, will respectfully move the Court for entry of an Order: (1) appointing Mr. Dellock as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (2) approving his selection of Bleichmar Fonti & Auld LLP ("BFA") to serve as Lead Counsel for the Class; (3) consolidating the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (4) granting any such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that Mr. Dellock believes he is the "most adequate plaintiff" under the PSLRA, and therefore should be appointed Lead Plaintiff.  Specifically, Mr. Dellock believes that he has the "largest financial interest" in the relief sought by the Class by virtue of, among other things, the roughly $80,000 in losses that he incurred on his investments in Marqeta, Inc. ("Marqeta" or the "Company") securities during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Mr. Dellock also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because his claims are typical of other members of the Class and because he will fairly and adequately represent the Class.

This Motion is based upon the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Lesley E. Weaver ("Weaver Decl.") filed herewith, the pleadings and other filings herein, and any such other written or oral argument as the Court may permit.

WHEREFORE, Mr. Dellock respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of BFA to serve as Lead Counsel for the Class; (3) consolidate the Related Actions; and (4) grant any such other relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   STATEMENT OF THE ISSUES TO BE DECIDED**

1.   Whether the Court should appoint Mr. Dellock as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

2.   Whether the Court should approve Mr. Dellock's selection of BFA to serve as Lead Counsel for the proposed Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

3.   Whether the Court should consolidate the above-captioned actions pursuant to Rule 42(a).

**II.   PRELIMINARY STATEMENT**

The Related Actions allege that Marqeta and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the Related Actions allege that from May 7, 2024 through November 4, 2024 (the "Class Period") Defendants misrepresented the Company's growth in new business bookings, as well as the positive impact that increased regulatory scrutiny had on Marqeta's business given the investments the Company made in its program management and compliance platforms.

The complaints in the Related Actions assert different class periods. The complaint in *Wai v. Marqeta, Inc.*, No. 4:24-cv-08874 (N.D. Cal.) ("*Wai*"), asserts a class period of August 7, 2024 through November 4, 2024 while the complaint filed in *Ford v. Marqeta, Inc.*, No. 4:24-cv-08892 (N.D. Cal.) ("*Ford*"), asserts a broader class period of May 7, 2024 through November 4, 2024. For purposes of appointing a Lead Plaintiff, the longest alleged class period governs. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008).

The PSLRA states that the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Dellock respectfully submits that he is the "most adequate plaintiff"

by virtue of, among other things, the roughly $80,000 in losses he incurred on his investments in Marqeta securities during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Mr. Dellock also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class. Indeed, Mr. Dellock fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as a Lead Plaintiff to guarantee vigorous prosecution of this action. S*ee* Weaver Decl. Ex. A.

In addition to his own claims, Mr. Dellock is prosecuting the claims of his wife, Jean Susan Dellock, pursuant to a valid assignment and is fully empowered to prosecute the claims. *See* Weaver Decl. Ex. B. Courts routinely appoint Lead Plaintiff candidates that are prosecuting claims pursuant to an assignment. *See e.g., Markette v. XOMA Corp.*, 2016 WL 2902286, at *4, *8-9 (N.D. Cal. May 13, 2016).

Mr. Dellock has further demonstrated his adequacy by selecting BFA, a law firm with substantial experience in successfully prosecuting complex securities class actions, to serve as Lead Counsel for the Class. Accordingly, Mr. Dellock respectfully requests that the Court appoint him as Lead Plaintiff and otherwise grant his motion.

## III.    FACTUAL BACKGROUND

Marqeta operates a cloud-based open application programming interface platform that delivers card issuing and transaction processing services. Marqeta offers its solutions in various verticals, including financial services, on-demand services, expense management, and ecommerce enablement. ¶19. All citations to ¶__ refer to the complaint filed in *Ford*, unless otherwise indicated.

As alleged, throughout the Class Period, the Company misrepresented that its business was on a "solid trajectory" and experienced growth from "major fintech customers expanding into new use cases [], as well as [] from newer customers." ¶¶20-21. What's more, Marqeta discussed how increased regulatory requirements for the Company's clients served as a significant tailwind for Marqeta's business. According to CEO Khalaf on the Company's 1Q 24 earnings call held on May 7, 2024, "[p]reviously, several of our customers, namely fintechs, chose to take program management and other

services in-house only to reverse course later given the complexity and regulatory requirements associated with scale. . . we believe compliance-related services, in particular, will be a key selling point and differentiator for our platform.  Many competitors do not offer the same level of service and many prospective customers don't want to do this work themselves[.]"  ¶22.  On the same earnings call, CFO Milotich discussed the ramping of new customers, stating that the Company was "ahead of schedule . . . based on a couple of customers launching a little more quickly than we expected and 1 or 2 also ramping a little faster than we had projected."  ¶24.

On May 20, 2024, CEO Khalaf further discussed at the 52nd J.P. Morgan Annual Global Technology, Media & Communications Conference that Marqeta continued to experience significant bookings and growth.  He told investors that "on the booking side, as we talked about, we are ahead of plan, and the pipeline is growing faster than our bookings, which is a very good thing.  So we're not draining the pipeline to make the quarter."  ¶26.  Khalaf further discussed at the conference how the Company's compliance-related services were "absolutely" a differentiator for the Company, given its investments in its platform, which have "all been done" and were "built," making Marqeta's "unit economic[s] [] significantly better than what each customer can get on their own."  ¶26.

As alleged, these statements were materially false and misleading.  In truth, the increased regulatory scrutiny led to significant delays in ramping up new business, and Marqeta's compliance and program management capabilities were inadequate to deal with the increased scrutiny facing its banking partners.  ¶34.

Investors began to learn the truth on November 4, 2024, when the Company reported its third quarter financial results and cut its full year 2025 growth outlook.  ¶35.  During the same-day earnings call, Marqeta CEO Khalaf stated that "last year, the regulatory environment changed amongst the smaller banks that supports many of our customers' programs," which led to "delays in launching new programs."  ¶36.  According to CEO Khalaf, "[o]n average, the time to launch new programs grew 30% to 40% from 2023, and we expect that increase to remain for at least 2 additional quarters as we and our bank partners become more agile in launching programs in this new environment."  ¶36.  While the regulatory environment changed "last year," and the Company was "very aware of the scrutiny," Marqeta

admitted that it "became apparent over the last few months" that the delays would dent revenue and gross profit. ¶¶35-37. On this news, the price of Marqeta stock declined $2.53 per share, or nearly 43%, from $5.95 per share on November 4, 2024 to $3.42 per share on November 5, 2024. ¶42.

Pursuant to Civil Local Rule 3-7(c), Mr. Dellock certifies that he has reviewed and adopts the allegations in the complaints filed in the above-captioned cases for purposes of this motion. If appointed Lead Plaintiff, Mr. Dellock reserves his right to file an amended complaint asserting other or different allegations.

## IV.    ARGUMENT

### A.    Mr. Dellock Should Be Appointed Lead Plaintiff

Mr. Dellock respectfully submits that he should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members[.]" 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria"). Here, Mr. Dellock believes that he is the presumptively "most adequate plaintiff" because he: (1) complied with the PSLRA's procedural requirements; (2) believes he asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

### 1.    Mr. Dellock Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days after publication of notice of the pendency of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On December 9, 2024, Plaintiff Wilson Wai filed the first of the Related Actions which alleged that Defendants defrauded investors during the period of August 7, 2024 through November 4, 2024. On the same day, counsel for Mr. Wai published notice of the pendency of the action on *Business Wire*, setting the deadline to seek Lead Plaintiff status by February 7, 2025. *See* Weaver Decl. Ex. C. On December 10, 2024, Plaintiff David Ford filed the second of the Related Actions which alleged that Defendants

defrauded investors during a broader period of May 7, 2024 through November 4, 2024.  As such, Mr. Dellock's motion is timely.

### 2. Mr. Dellock Believes He Has The Largest Financial Interest In The Relief Sought By The Class

Mr. Dellock believes that he has the "largest financial interest in the relief sought by the Class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Mr. Dellock incurred a recoverable loss of approximately $80,000 on his investments in Marqeta securities during the Class Period as assessed under the Supreme Court's ruling in *Dura*.  Under *Dura*, "the plaintiff must allege that the defendant's fraud, not market forces, caused the economic loss." *Jaszczyszyn v. SunPower Corp.*, 2022 WL 10208559, at *2 (N.D. Cal. Oct. 13, 2022).  "To do so, the plaintiff 'must allege that the defendant's 'share price fell significantly after the truth became known.'" *Id.* (citation omitted).  "The Supreme Court noted in *Dura* that 'if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.'" *Id.* at *3 (citations omitted).  As such, shares sold prior to the revelation of the alleged fraud are not considered for purposes of *Dura*.  *Id.*

Courts may also rely on inventory accounting methodologies without considering the impact of *Dura* to determine the movant with the largest financial interest.  Here, without considering the impact of *Dura*, Mr. Dellock also incurred a loss of approximately $80,000 on his investments in Marqeta securities during the Class Period.

In addition to losses, courts often consider various other metrics, typically referred to as "Lax factors," to further analyze a movant's financial interest when warranted.  *See Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest).  Mr. Dellock's PSLRA-required Certification (attached as Exhibit D to the Weaver Decl.) and his financial interest calculation (attached as Exhibit E to the Weaver Decl.) provide all the trading information necessary to calculate his financial interest under all possible metrics and does not presuppose that there is only one valid methodology.

To the best of Mr. Dellock's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Mr. Dellock has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. Mr. Dellock Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Mr. Dellock also otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23." *Krieger v. Atheros Commc'ns, Inc.*, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011) (citation omitted). Mr. Dellock satisfies both requirements.

Mr. Dellock's claims are typical of the claims of other purchasers of Marqeta securities. When "determining whether typicality is satisfied, a Court inquires 'whether other members [of the Class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (citation omitted). Here, Mr. Dellock sustained injuries virtually identical to other Class members and his claims are based on the same course of conduct because, like all other Class members, Mr. Dellock: (1) purchased Marqeta securities during the Class Period; (2) purchased at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) was damaged thereby. *See id.* As such, Mr. Dellock satisfies the typicality requirement.

Mr. Dellock also satisfies the adequacy requirement of Rule 23. The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Align*, 2013 WL 2368059, at *4 (citation omitted). Mr. Dellock satisfies these elements because his substantial financial stake in the litigation provides him with the incentive to vigorously represent the Class's claims and oversee counsel. Further,

Mr. Dellock's interests are aligned with those of other putative class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Dellock and the other purported Class members.

Indeed, Mr. Dellock is committed to discharge his obligations as Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Weaver Decl. Ex. A. What's more, Mr. Dellock's Declaration provides the Court with additional information supporting his bona fides, including explaining who he is, that he is an experienced investor with approximately 35 years of investment experience, and given his substantial financial interest in the litigation, that he intends to continue to actively oversee counsel, confer with counsel regarding litigation strategy, attend important court proceedings, hearings, depositions and mediations, and review and authorize the filing of important litigation documents. *See id.* ¶¶2-8.

Finally, Mr. Dellock has demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class actions and has repeatedly demonstrated an ability to conduct complex securities actions effectively.

**B.      Mr. Dellock Selected Well-Qualified Counsel To Represent The Class**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Weaver Decl. Ex. F. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution in this District on behalf

of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Sec. Litig.*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

### C.    The Related Actions Should Be Consolidated

Federal Rule of Civil Procedure 42(a) allows the Court to consolidate actions that "involve a common question of law or fact[.]" There are two Related Actions pending against Marqeta in this District:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Wai v. Marqeta, Inc..* | 4:24-cv-08874-YGR | December 9, 2024 |
| *Ford v. Marqeta, Inc.* | 4:24-cv-08892-YGR | December 10, 2024 |

The Related Actions present substantially similar factual and legal issues because they allege the same legal claims against the same defendants, arise out of a substantially similar course of conduct during overlapping periods of time, and allege similar types of misrepresentations. Accordingly, consolidation of these actions, and any similarly related subsequently filed or transferred actions, is appropriate under Rule 42. *See Moradpour v. Velodyne Lidar, Inc.*, 2021 WL 2778533, at *2 (N.D. Cal. July 2, 2021) (consolidating three securities class actions because "[a]ll three actions arise from the same factual scenario—namely, whether [the company's] securities were artificially inflated during the class period as a result of defendant's alleged conduct and public statements").

### V.    CONCLUSION

For the foregoing reasons, Mr. Dellock respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of BFA as Lead Counsel for the Class, consolidate the Related Actions, and grant such other relief as the Court may deem just and proper.

DATED: February 7, 2025

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

  */s/ Lesley E. Weaver*
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
Adam C. McCall (Bar No. 302130)
amccall@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

-and-

Javier Bleichmar (*pro hac vice* forthcoming)
jbleichmar@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960

-and-

Ross Shikowitz (*pro hac vice* forthcoming)
rshikowitz@bfalaw.com
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960

*Counsel for Proposed Lead Plaintiff Paul Dellock, and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Lesley E. Weaver*
Lesley E. Weaver