*Via CM/ECF*
February 25, 2025

Judge Yvonne Gonzalez Rogers
Oakland Courthouse
Courtroom 1 – 4th Floor
1301 Clay Street
Oakland, CA 94612

> **Re:    *Wai v. Marqeta, Inc.*, No. 4:24-cv-08874-YGR**

Dear Judge Gonzalez Rogers:

On February 14, 2025, the Court entered an Order requiring "the parties, including movants and the defendants, to meet and confer regarding the motions for appointment" of Lead Plaintiff by February 25, 2025.  Dkt. No. 34.  The Order also stated that the "parties shall also consider whether to consent to proceed before a Magistrate Judge for all purposes."  *Id.*

All parties have since met and conferred.  The only movants or parties that continue to seek Lead Plaintiff appointment are Paul Dellock and Tyler Hogge.  Counsel for Messrs. Dellock and Hogge, along with counsel for Defendants, met and conferred via Teams videoconference on February 20, 2025, but were unable to resolve the dispute with respect to the motions for appointment of a lead plaintiff.  Accordingly, Messrs. Dellock and Hogge respectfully submit this joint letter brief outlining their respective positions as required by the Court's February 14 Order.  In addition, not all parties consent to proceed before a Magistrate Judge, as discussed below.

## I.    MR. DELLOCK'S POSITION

Mr. Dellock is entitled to be appointed Lead Plaintiff because he asserts the "largest financial interest" and his adequacy and typicality is undisputed.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc).  Mr. Dellock's $80,000 loss is ***23% larger*** than the approximate $65,000 loss that Mr. Hogge claimed in his initial motion and larger than the loss claimed by all other movants ***combined***.  *See* Dkt. Nos. 17 at 7; 19 at 6; 24 at 9; 26 at 6-7.

The Ninth Circuit has equated largest financial interest with largest financial loss.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status").  Virtually every court in this Circuit has held that "approximate losses suffered are the most determinative" factor when assessing financial interest.  *Coan v. B. Riley Fin., Inc.*, 2024 WL 5301847, at *3 (C.D. Cal. Aug. 8, 2024).  This Court has likewise appointed the movant with the largest claimed loss in all its Lead Plaintiff decisions under the PSLRA.  Recognizing as much, Mr. Hogge argued in his motion that he "is the most adequate plaintiff [] based on his significant losses suffered," and presented his losses using the last-in, first-out ("LIFO") methodology accepted by this Court.  Dkt. Nos. 20 at 1; 21-3; *see also Ali v. Intel Corp.*, 2018 WL 2412111, at *2 n.7 (N.D. Cal. May 29, 2018) (Gonzalez Rogers, J.) ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO')['] methodology").

Now, after the motions were filed and realizing that he lacks the largest loss, Mr. Hogge reverses course and contends that the Court should place significant weight on three other factors—the number of shares and net shares purchased, as well as the amount of net funds

Hon. Yvonne Gonzalez Rogers
February 25, 2025
Page 2

expended.  Courts have found that these factors carry little to no weight in these circumstances where Mr. Dellock asserts a loss that is **23% larger** than Mr. Hogge, and the difference in the remaining factors are *de minimis*. *See, e.g.*, *In re Cheetah Mobile, Inc., Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (appointing movant with 7% greater loss over opposing movant that purchased 11% more shares and net shares and expended more net funds); *Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013) (14% loss differential "determinative" and not "*de minimis*" despite opposing movant claiming "higher values for net shares purchased and net funds expended").  The only factor where Mr. Hogge can claim an advantage is the total number of shares purchased, which courts have held is "the least important" factor.  *Clifton v. Willis*, 2024 WL 1508832, at *7 (D. Colo. Mar. 5, 2024) (appointing movant who incurred 8% larger loss over movant who purchased 330% more shares and net shares).  To find that Mr. Hogge has the largest financial interest would elevate the least important factor over the most important factor.  The table below summarizes each factor.  *See* Dkt. Nos. 21-3; 27-6.

| Movant | Shares | Net Shares | Net Funds Expended | Claimed Loss |
|---|---|---|---|---|
| **Mr. Dellock** | 70,000 | 70,000 | $348,860 | $79,811 |
| **Mr. Hogge** | 100,000 | 73,913 | $349,209 | $65,120 |
| **Difference** | 43% | 6% | 0.1% | 23% |

Recognizing that the overwhelming weight of Ninth Circuit authority places determinative weight on loss, Mr. Hogge then abandons the representations and LIFO loss methodology advanced in his initial motion.  While Mr. Hogge told the Court that his loss was $65,120 (Dkt. No. 20 at 6) under LIFO, he now claims that his loss is $84,697.  The only way he can make this claim is to jettison LIFO and rely on a different loss method known as the "retained share" method, which is never mentioned in his initial motion and this Court has never adopted.

Courts in this District have consistently rejected the shifting of position that Mr. Hogge attempts here.  *See, e.g.*, *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (rejecting movant when "after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare [] did [movant] argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology"); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (rejecting movant that "made no reference to [] a retained shares calculation in its opening motion [], shifting its argument only after [opposing movant] came forward with larger LIFO losses"); *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) (rejecting movant that "changed its loss calculation only after all lead plaintiff motions had been submitted" and noting that "District courts across the country have uniformly disapproved of such gamesmanship").

The Court would be correct to question Mr. Hogge's claims that the retained share method is somehow "more accurate" when he advanced that method only after Mr. Dellock came forward with a 23% larger LIFO loss.  Adopting the retained share method in this instance would lead to **inaccurate** results because it **ignores gains** Mr. Hogge enjoyed from selling Marqeta stock during the Class Period (which is why his loss increases).  The "main advantage" of the LIFO method this Court accepted in *Intel* is that it "**takes into account gains** that might have accrued to plaintiffs during the class period due to the inflation of the stock price."  *McGee v. American Oriental Bioengineering, Inc.*, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012) (emphasis added).  Any contention that Mr. Dellock endorsed the retained share method is wrong, as he presented his loss under LIFO as well as the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*,

Hon. Yvonne Gonzalez Rogers
February 25, 2025
Page 3

544 U.S. 336 (2005), which "leads to the exclusion of pre-corrective action *losses* only, not gains." *Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *5 (E.D.N.Y. Feb. 4, 2022).

If appointed Lead Plaintiff, Mr. Dellock would consent to proceed before a Magistrate Judge. To conserve the resources of the Court and the parties, Mr. Dellock respectfully submits that the Lead Plaintiff motions can be decided on the papers already submitted.

## II. MR. HOGGE'S POSITION

Tyler Hogge ("Hogge") consents to proceed before a Magistrate Judge. Hogge should also be appointed as lead plaintiff and his selection of counsel should be approved because Hogge has the largest financial interest in the relief sought by the class as measured by the four *Olsten-Lax* factors courts typically consider (gross shares purchased, net shares purchase, net expenditure, and loss), and no party challenges Hogge's adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Loss (Retained Shares Method) |
|---|---|---|---|---|
| Tyler Hogge | 100,000 | 73,913 | $349,209 | $84,697 |
| *Paul Dellock* | *30,000* | *30,000* | *$153,399* | *$38,092* |
| *Jean Dellock* | *40,000* | *40,000* | *$195,461* | *$41,719* |
| Dellocks Total | 70,000 | 70,000 | $348,860 | $79,811 |

Only the Dellocks challenge Hogge's appointment—claiming they have a larger last in, first out ("LIFO") loss than Hogge if Paul and Jean's LIFO losses are added together (as neither one of them individually has a larger LIFO loss than Hogge). However, the Dellocks' analysis is incorrect because the retained shares method is a better loss calculation method than the LIFO method where, as here, the complaints allege only one corrective disclosure. Also, the Dellocks ignore the other three factors, all of which favor Hogge. Considering all four factors, including loss according to the retained shares method, Hogge has the largest financial interest.

While the Dellocks accuse Hogge of "shifting" his financial interest analysis by highlighting the above well-accepted measures of financial interest other than LIFO loss, the Dellocks are in fact shifting. The Dellocks endorsed the *Olsten-Lax* factors and the validity of the retained shares method in their lead plaintiff motion. *See* Dkt. No. 27 at 7 (admitting "courts often consider . . . [the] 'Lax factors,' and endorsing a loss calculation in which "shares sold prior to the revelation of the alleged fraud are not considered," which is the retained shares method). Only now that they see Hogge has the largest financial interest according to these measures do the Dellocks propose the Court ignore them. Regardless, the measures of financial interest Hogge identifies are well-accepted in this District, and courts have rejected perceived "shifts" only when the newly-proposed method was ill-suited to the analysis, which is not the case here. *See, e.g.*, *Twist Bioscience*, 2023 WL 4849431, at *5 (rejecting "a method that has never been adopted by any district court in this circuit"); *Gopro*, 2016 WL 1718217, at *3 (rejecting the retained shares method where the complaint alleged "gradual [partial] disclosures"); *Hewlett Packard*, 2013 WL 792642, at *4 (rejecting the retained shares method because there were "multiple partial corrective disclosures").

To assess financial interest, district courts are free to choose any method that is "both rational and consistently applied." *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Courts in this District typically rely on the four *Olsten-Lax* factors. *See Retail Wholesale Dep't Store*

Hon. Yvonne Gonzalez Rogers
February 25, 2025
Page 4

*Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2023 WL 3613313, at *3 n.3 (N.D. Cal. May 22, 2023). Loss is the most important factor, but the other three factors carry more weight where, as here, both movants claim the largest loss based on different calculation methods. *See Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4-*5 (E.D. Mich. Oct. 24, 2014) (relying on the first three factors to determine financial interest where both movants claimed the largest loss, reasoning "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied").

To calculate loss, courts in this District "often rely on one of two methods": the "LIFO" method or the "retained shares method." *See Stitch Fix*, 2023 WL 3613313, at *3; *see also In re Lyft Sec. Litig.*, 2020 WL 1043628, at *3-*4 (N.D. Cal. Mar. 4, 2020) ("[c]ourts in this district primarily have relied on two methods"). The retained shares method "looks to the shares purchased during the class period and retained at the end of the class period and calculates the total net loss considering only those securities." *Id.* at *4; *see also In re AudioEye, Inc. Sec. Litig*, 2015 WL 13654027, at *5 (D. Ariz. Aug. 3, 2015) ("This Court will follow the Ninth Circuit cases that have held that, when calculating lead plaintiff movant's losses . . . any loss or gain on pre-disclosure sales will be disregarded."); *Luongo v. Desktop Metal, Inc.*, 2022 WL 2532498, at *5 (D. Mass. July 7, 2022) (similar, "excluding the gains and losses").

The retained shares method is more accurate than the LIFO method where, as here, there is only one alleged corrective disclosure. *Lyft*, 2020 WL 1043628, at *4 (the retained shares method "will most accurately calculate net loss where there are not multiple partial disclosures") (citation omitted); *Markette v. XOMA Corp.*, 2016 WL 2902286, at *6 (N.D. Cal. May 13, 2016) (using the "retained shares method" because the "complaint alleges that a single disclosure revealed Defendants' purported fraud and does not suggest that any partial disclosures occurred during the class period"). The complaints in this action allege one corrective disclosure on November 4, 2024. *See* Dkt. No. 1 ¶¶ 25-29. The retained shares method is a more accurate loss calculation method here since it considers losses and gains only on those shares impacted by the alleged fraud—namely only the shares actually held at the time of the alleged corrective disclosure.

Since Hogge has the largest financial interest as measured by every *Olsten-Lax* factor, including loss, and no party contests that Hogge is adequate to represent the class, Hogge should be appointed as lead plaintiff and his selection of counsel should be approved.

## III.    DEFENDANTS' POSITION

Defendants take no position on the competing motions for appointment of a lead plaintiff except to note that Defendants believe it would be inappropriate for the remaining competing lead plaintiff candidates to now request that they collectively be appointed lead plaintiffs as a group. *See, e.g.*, *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) ("[T]he clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses."). Also, having considered whether to consent to proceed before a Magistrate Judge, Defendants decline to do so.

Dated: February 25, 2025                                    Respectfully submitted,

| s/ *Lesley E. Weaver* | s/ *Charles H. Linehan* | s/ *James N. Kramer* |
|---|---|---|
| Lesley E. Weaver | Charles H. Linehan | James N. Kramer |
| Counsel for Mr. Dellock | Counsel for Mr. Hogge | Counsel for Defendants |