**GLANCY PRONGAY WOLKE & ROTTER LLP**
ROBERT V. PRONGAY (#270796)
JASON L. KRAJCER (#234235)
CHRISTOPHER R. FALLON (#235684)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
jkrajcer@glancylaw.com
cfallon@glancylaw.com

*Lead Counsel for Lead Plaintiff Tyler Hogge*
*and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE MARQETA, INC. SECURITIES LITIGATION | Civil Action No. 4:24-cv-08874-YGR<br><br>**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 28, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION AND MOTION .................... 1

I. PRELIMINARY STATEMENT .................... 1

II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY .................... 2

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) .................... 4

IV. ARGUMENT .................... 5

A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors .................... 5

1. Plaintiff and Lead Counsel Adequately Represented the Settlement Class .. 5

2. The Settlement is the Result of Arms'-Length Negotiations .................... 6

3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation .................... 6

(a) The Strength of Plaintiff's Case and Risk of Continued Litigation .. 7

(b) Risks of Maintaining Class Action Status .................... 9

4. Rule 23(e)(2)(C)(iii)-(iv) .................... 10

5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other .................... 11

6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval .................... 12

V. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES ........ 14

A. The Settlement Class Is Sufficiently Numerous .................... 16

B. Common Questions of Law Or Fact Exist .................... 16

C. Plaintiff's Claims Are Typical of Those of the Settlement Class .................... 17

D. Plaintiff and Lead Counsel Adequately Represent the Settlement Class .................... 17

E. The Predominance and Superiority Requirements Are Satisfied .................... 17

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................... 18

VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA ....... 20

A. Retention of Epiq Global ........ 20
B. The Method of Notice is Adequate ........ 21
C. The Content of Notice is Adequate ........ 22
D. Claims Processing ........ 23
E. Estimated Notice and Administrative Costs ........ 23
VIII. ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES ........ 23
IX. CONCLUSION ........ 25

**TABLE OF AUTHORITIES**

CASES

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) .......... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 15, 18

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .......... 21

*Barani v. Wells Fargo Bank, N.A.*,
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .......... 21

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .......... 15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......... 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 5

*Cullen v. RYVYL Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025) .......... 8, 9

*Gross v. GFI Grp., Inc.*,
784 F. App'x. 27 (2d Cir. Sept. 13, 2019) .......... 8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... passim

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......... 10, 12, 13, 25

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) .......... 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......... 21

*In re American Apparel, Inc. Shareholder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) .......... 24

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .... 8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .... 7, 10

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) .... 25

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .... 9

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .... 14

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .... 11

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .... 17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .... 8

*In re China Med. Corp. Sec. Litig.*,
2013 WL 12126754 (C.D. Cal. May 16, 2013) .... 16

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .... 16

*In re FibroGen, Inc., Sec. Litig.*,
2025 WL 3526822 (N.D. Cal. Dec. 9, 2025) .... 20

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .... 8

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .... 9

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .... 14

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) .... 16

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .... 24

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........ 13, 24

*In re Mut. Funds Inv. Litig.*,
2010 WL 2342413 (D. Md. May 19, 2010) ........ 21

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........ 25

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008) ........ 9, 18, 24

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........ 10, 24

*In re Silver Wheaton Corp. Sec. Litig.*,
2017 WL 2039171 (C.D. Cal. May 11, 2017) ........ 17

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2025 WL 924929 (C.D. Cal. March 24, 2025) ........ 20

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ........ 11, 12, 18, 20

*In re Tezos Sec. Litig.*,
2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ........ 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod.* Liab. Litig.,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ........ 12

*In re Washington Public Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........ 24

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........ 16

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ........ 7

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ........ 24

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ........ 17

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ........ 5, 6

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391 (C.D. Cal. June 24, 2009) .......... 24

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 7, 14

*Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615 (N.D. Cal. 1982) .......... 12

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .......... 24

*Persky v. Turley*, 1991 WL 329564 (D. Ariz. Dec. 20, 1991) .......... 17

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) .......... 9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......... 6

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .......... 24

*Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013) .......... 13

*Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451 (C.D. Cal. May 13, 2019) .......... 6

*Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......... 14

*Vikram v. First Student Management, LLC*, 2019 WL 1084169 (N.D. Cal. March 7, 2019) .......... 12

*Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563 (C.D. Cal. 2012) .......... 16

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .......... 15

*Wong v. Arlo Techs., Inc.*, 2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) .......... 5, 6, 7

*Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......... 11

*Yaron v. Intersect ENT, Inc.*,
2021 WL 5150052 (N.D. Cal. Nov. 5, 2021) ... 20

STATUTES

15 U.S.C. § 78u-4(a)(4) ... 12, 25

15 U.S.C. § 78u-4(a)(7) ... 22

28 U.S.C. § 1715 (2005) ... 22

RULES

FED. R. CIV. P. 23 ... *passim*

**NOTICE OF UNOPPOSED MOTION AND MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2026, at 9:00 a.m., in Courtroom 1 (4th Floor), or as soon thereafter as the matter may be heard, Lead Plaintiff Tyler Hogge ("Plaintiff") will, and hereby does, move the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice ("Preliminary Approval Order") submitted herewith.[1]

As set forth in the memorandum of law, in accordance with Federal Rule of Civil Procedure 23(e), the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Settlement Class. Accordingly, Plaintiff requests that the Court: (i) grant preliminary approval of the proposed Settlement of this Action on the terms set forth in the Stipulation of Settlement and exhibits thereto; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iii) preliminarily certify the Settlement Class, and appoint Plaintiff as the class representative and Lead Counsel as class counsel for the Settlement Class; and (iv) set a hearing date to finally determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.

The motion is based on the following memorandum, the Krajcer Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated June 17, 2026 ("Stipulation"). A true and correct copy of the Stipulation and its exhibits are attached as Exhibit 1 to the Declaration of Jason L. Krajcer in Support of Motion for Preliminary Approval of Class Action Settlement (the "Krajcer Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Krajcer Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants in exchange for a non-reversionary, all cash payment of $13,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This is an excellent result for the Settlement Class, representing a recovery of approximately 5.5-8.7% of the ***maximum*** damages related to the pending claims, which is ***more than twice*** the median percentage recovery in securities class actions with similar damages that have settled in the last ten years.[2] For this reason, and as further discussed herein, the Settlement is substantively fair.

The Settlement was also achieved in a procedurally fair manner. By the time the Settlement was reached, Plaintiff and his counsel were well informed about the strengths and weaknesses of his claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to interview former Marqeta employees, and consulting with experts in the fields of loss causation and damages;
- drafted the comprehensive 80-page (207 paragraph) Amended Complaint (the "Complaint") based on their research and investigation;
- engaged in substantial briefing opposing Defendants' motion to dismiss;
- participated in a full-day, in-person mediation session overseen by a highly experienced third-party mediator, Robert A. Meyer, Esq. of JAMS (the "Mediator"), which involved an exchange of written submissions concerning the facts of the case, liability and damages, and that resulted in a mediator's recommendation to settle the Action for $13 million; and
- conducted significant due diligence discovery to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action, which included a review and analysis of over 12,000 pages of documents produced by Marqeta concerning the matters alleged in the Complaint, and a confirmatory interview with a senior Marqeta employee. *See* ¶¶6-13.

As discussed in detail below, Plaintiff and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order. Defendants do not oppose Plaintiff's request.

---

[2] *See* Ex. 2 (Edward Flores, Svetlana Starykh, and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation, 2025 Full-Year Review* (NERA, Jan. 21, 2026)) ("NERA Report"), at 27 (Fig. 23).

## II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

Plaintiff asserts claims on behalf of a putative class of investors pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants Marqeta, Inc. ("Marqeta"), Simon Khalaf, its Chief Executive Officer, and Michael Milotich, its Chief Financial Officer. Plaintiff alleges that between February 28, 2024 and November 4, 2024 (the "Settlement Class Period"), investors were misled by statements Defendants made regarding Marqeta's speed of operations and improvements in the time it took to launch new programs and the strengths of Marqeta's regulatory compliance capabilities and its level of investment in regulatory compliance.

The Action was initiated on December 9, 2024, with the filing of a class action complaint styled *Wai v. Marqeta, Inc. et al.*, Case No. 4:24-cv-08874-YGR ("*Wai*"). ECF No. 1. On December 10, 2024, a substantially similar class action complaint was filed in the Court, styled *Ford v. Marqeta, Inc. et al.*, Case No. 4:24-cv-08892-YGR ("Ford"). On February 7, 2025, Tyler Hogge filed a motion pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to be appointed lead plaintiff in the Action. ECF No. 20. On March 11, 2025, the Court consolidated *Wai* and *Ford* and recaptioned the consolidated action as *In re Marqeta, Inc. Securities Litigation*, Case No. 24-cv-08874-YGR, appointed Mr. Hogge to serve as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP to serve as Lead Counsel.[3] ECF No. 38.

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Marqeta's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, research reports prepared by securities and financial analysts, and news articles concerning Marqeta, increased regulatory scrutiny facing banks that service the fintech industry and the consent orders entered into by some of those banks, (c) Marqeta's investor call transcripts, press releases and other public statements made by the Defendants prior to, during, and after the Settlement Class Period, and (d) other publicly available material related to Marqeta; (2) retaining and working

[3] In January 2026, Glancy Prongay & Murray LLP changed its name to Glancy Prongay Wolke & Rotter LLP. *See* ECF No. 65.

with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (3) consulting with a damages and loss causation expert. On April 10, 2025, Plaintiff filed and served his Amended Complaint (the "Complaint") based on this investigation. ECF No. 47.

Defendants moved to dismiss the Complaint on May 15, 2025. ECF No. 51. Plaintiff filed his opposition brief on June 20, 2025 (ECF No. 55), and Defendants filed their reply on July 11, 2025. ECF No. 59. On September 2, 2025, the Parties filed a stipulation to continue the hearing on the motion to dismiss to January 13, 2026, or some date thereafter, given that the Parties had agreed to participate in a mediation in an attempt to resolve the Action. The Court entered the proposed order that same day. ECF Nos. 61-62.

On November 3, 2025, Lead Counsel and Defendants' Counsel participated in a full-day, in-person mediation session with their agreed Mediator. In advance of that session, the Parties exchanged, and provided to the Mediator, detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The mediation culminated in Mr. Meyer making a mediator's recommendation to resolve the Action for $13,000,000 in cash for the benefit of the Settlement Class, which the Parties accepted. The agreement in principle to settle the Action was memorialized in a term sheet dated November 3, 2025 (the "Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants in the amount of $13,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplates the execution of a customary "long form" stipulation and agreement of settlement and related papers.

As provided for in the Term Sheet, and as a condition of the Settlement, Defendants agreed to a due diligence discovery process to enable Plaintiff to evaluate representations made during the mediation process and to further assess the fairness, reasonableness, and adequacy of the proposed Settlement. On December 3, 2025, the Parties entered into a stipulation providing for, *inter alia*, the confidential treatment of the discovery materials to be produced by Defendants, and the use of such materials only in the context of this settlement. From December 3, 2025, to January 2, 2026,

Defendants produced nearly 12,000 pages of documents concerning the matters at issue in the Complaint. On March 10, 2026, Defendants made available a senior Marqeta employee for an interview with Lead Counsel to discuss the subjects at issue in the Action. After evaluating the discovery produced, Lead Counsel concluded that it supports the fairness, reasonableness, and adequacy of the Settlement. On June 17, 2026, the Parties executed the Stipulation.

## III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A) have the class representatives and class counsel adequately represented the class;
> (B) was the proposal negotiated at arm's length;
> (C) is the relief provided for the class adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously adopted by the courts. Thus, the Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[4]

[4] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. There is no government participant.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain Hanlon factors.").[5] As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV. ARGUMENT

### A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors

#### 1. Plaintiff and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.

Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel has successfully prosecuted securities class actions and complex litigation in federal and state courts

[5] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

throughout the country. *See* Ex. 4 (GPWR firm résumé). Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, *inter alia*, conducting an extensive investigation, drafting the amended complaint, briefing the motion to dismiss, and obtaining a $13 million Settlement for the benefit of the Settlement Class. *See PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPWR] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

### 2. The Settlement is the Result of Arms'-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness, specifically, that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[6] The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arm[']s-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Parties agreed to mediate with Mr. Meyer in November 2025, the negotiations were extensive, and they continued until the Parties accepted the mediator's proposal. The arm's-length nature of the settlement negotiations and the involvement of a mediator with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See*, *e.g.*, *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq." and the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive[.]").

### 3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[7] As discussed below, each of these factors

[6] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

[7] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation

supports the Settlement's approval.

**(a) The Strength of Plaintiff's Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). While Lead Counsel believes Plaintiff's claims have merit, they also recognize the substantial obstacles to proving liability and class-wide damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

At the time the Settlement was reached, the Court had not ruled on Defendants' motion to dismiss. The focus of Defendants' motion was falsity and scienter. Defendants argued, *inter alia*, that Plaintiff failed to adequately allege a material misstatement because he did not identify when "material delays" in the onboarding of Marqeta's new customers and the launch of new programs occurred in contravention of Rule 9(b) and the PSLRA pleading requirements. *See* ECF No. 59 at 1. Additionally, Defendants argued that even if Plaintiff adequately alleged when material delays occurred, the challenged statements are inactionable statements of uncontested historical fact, forward-looking statements shielded by the PSLRA safe harbor, and/or generalized statements of optimism or puffery. *See id.* While Plaintiff believes he effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws (ECF No. 55), Lead Counsel knows from painful experience that even surviving a motion to dismiss under the

---

(second factor); and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

heightened pleading standard of the PSLRA on the issues of materiality and falsity does not guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court ***twice*** finding the statement actionable).

Moreover, Defendants mounted a strong defense to the Action's allegations relating to scienter. Defendants asserted, *inter alia*, that Plaintiff failed to allege a motive for the alleged wrongdoing given that rather than selling their stock during the class period, the Individual Defendants actually increased their Marqeta stock holdings. ECF No. 51 at 29. Defendants also argued that, during the class period, Marqeta spent at least $116 million repurchasing shares of its own stock. *Id*. While Lead Plaintiff believes he had the stronger argument with respect to scienter based on the totality of the circumstances, pleading and proving it was far from a *fait accompli*. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *11 (E.D.N.Y. Sept. 18, 2007) ("Establishing scienter is a difficult burden to meet and proving it will be especially challenging in this case where, apparently, neither the individual defendants nor any other Gilat executive profited from their Gilat investments."); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do.").

Nor did a win on liability assure a recovery. Defenses to loss causation and damages pose substantial risks to recovery at trial because each side would have presented expert testimony, requiring a jury to decide a so-called "battle of the experts." *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("Courts have recognized that, in a 'battle of experts,' the outcome cannot be guaranteed."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

"In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Cullen v. RYVYL Inc.*, 2025 WL 3731036, at *7 (S.D. Cal. Dec. 19, 2025). The parties would have to go through fact discovery, designation of experts, expert

discovery, a likely motion for class certification, likely motions for summary judgment, and trial. Plaintiff would also expect significant post-trial motions practice and appeals if the Settlement Class were to receive a favorable judgment. *See id*.

Although Plaintiff is confident in his case, success in these types of cases is never guaranteed at the pleading stage,[8] or even after a successful trial.[9] "Balancing the complexity, uncertainty, and delay of continued litigation against the immediacy and certainty of settlement, these factors weigh in favor of approval." *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *6 (S.D. Cal. Dec. 19, 2024).

**(b) Risks of Maintaining Class Action Status**

While Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* Sec. V, *infra*) a class has not yet been certified, and Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See*, *e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendant might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if Plaintiff had reached that stage. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.")

---

[8] *See* Krajcer Decl., Ex. 2 (NERA Report, at 18, Fig. 15 (motion to dismiss filed in 96% of the securities class action cases in the last ten years, and in cases where the motion was decided, 62% were granted with or without prejudice, 21% were partially granted, and only 17% denied in full)).

[9] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

**4. Rule 23(e)(2)(C)(iii)-(iv)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the Settlement Class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[10] *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount.").

**Rule 23(e)(2)(C)(iii):** As disclosed in the Postcard Notice and Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. As discussed in detail below (*see* Sec. VIII, *infra*), a proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to

[10] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted. *See* Stipulation ¶32.

33% percent of a $12 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Marqeta Common Stock purchased during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024).

**5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members).

Plaintiff will also seek reimbursement of costs incurred in representing the Settlement Class, as authorized by the PSLRA. Such awards do "not constitute inequitable treatment of Settlement

Class Members." *Stable Road*, 2024 WL 3643393, at *8; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) ("The PSLRA expressly permits an award of 'reasonable costs and expenses' to 'any representative party serving on behalf of a class.'") (quoting 15 U.S.C. § 78u-4(a)(4)).

### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[11] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *9 (N.D. Cal. Dec. 18, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

Here, Plaintiff's damages expert estimates that ***if*** Plaintiff had fully survived Defendants' motion to dismiss and summary judgment motions, ***if*** the Court certified the same class period as the Settlement Class Period, ***and if*** the Court and jury accepted Plaintiff's damages theory, including proof of loss causation—*i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $235 million. Under such a scenario, the $13 million recovery represents approximately 5.5% of the estimated maximum damages potentially available in this Action.

This case was not, however, risk free and there were meaningful barriers to recovery. For example, in addition to the risks set forth above (*see* Sec. IV.A.3(a), *supra*), Plaintiff anticipated

[11] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

that Defendants would assert that the stock price decline following the one alleged corrective disclosure event on November 4, 2024, was due—in whole or in part—to other confounding information, such as a reduction in Q4 2024 guidance as a result of some of its customers (including Marqeta's largest customer) taking the services Marqeta provided in-house. While Plaintiff strongly disagrees with this argument and believes he would not have to disaggregate, if Defendants were to prevail on those arguments, Plaintiff estimates that ***maximum*** recoverable damages would drop to between $150-$180 million. Under such circumstances, the $13 million settlement equates to approximately 7.2-8.7%.

A recovery in the range of 5.5-8.7% of maximum damages, is well-within the range of reasonableness. In fact, when compared to the median recovery in securities class action settlements with similar potential damages, it is an outstanding result. *See* Ex. 2 ((NERA Report, at 27, Fig. 23) (median recovery for securities class actions that settled in the last ten years was 2.7% for cases with estimated damages between $200-$399 million, and 3.2% for cases with estimated damages between $100-$199 million).

Given the range of possible results in this litigation—***including no recovery at all***—there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of preliminary approval. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits").

**<u>The Extent of Discovery Completed and the Stage of the Proceeding:</u>** In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.")

Here, Plaintiff conducted an extensive investigation into Marqeta, including, *inter alia*:

interviewing former employees; analyzing the Company's myriad SEC filings; and consulting with loss causation and damages experts. The Parties submitted substantial briefing relating to the motion to dismiss, exchanged and provided to the Mediator detailed mediation briefs, and participated in a full-day mediation session. Before finalizing the Stipulation, Defendants produced over 12,000 pages of documents to Plaintiff concerning the matters alleged in the Complaint, which Lead Counsel analyzed and used to interview a senior Marqeta employee, and to further evaluate the fairness, reasonableness, and adequacy of the Parties' agreement in principle to resolve the Action. The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions. *See In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding "Lead Plaintiff possesses sufficient information to make an informed settlement decision" and "this factor weighs in favor of granting final approval" under circumstances substantially similar to the case at bar); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

**The Experience and Views of Counsel:** "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528. Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Under such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class supports preliminary approval. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

## V. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

At the Settlement Hearing, Plaintiff will request final approval of the Settlement on behalf of the Settlement Class. Thus, it is appropriate for the Court to consider, at the preliminary approval

stage and solely for purpose of the Settlement, whether class certification appears to be appropriate. *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the Court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id*. Under subsection (b)(3), the Court must find that common questions of law or fact to the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id*.

The proposed Settlement Class consists of: "all persons and entities that purchased or otherwise acquired the publicly traded Class A common stock of Marqeta, Inc. ("Marqeta Common Stock"), and/or purchased or otherwise acquired publicly traded call options on such stock ("Marqeta Call Options"), and/or wrote publicly traded put options on such stock ("Marqeta Put Options"), between February 28, 2024 and November 4, 2024, both dates inclusive, and who were damaged thereby." Stipulation, ¶1(ww).[12] Plaintiff believes this Action satisfies all the factors for certification of a class[13] and, if the Action were to proceed toward trial, class certification would be appropriate. The Ninth Circuit and numerous courts within have held that class actions are generally favored in securities fraud actions. *See*, *e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir.

---

[12] Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer, and/or director of Marqeta during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Marqeta; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' D&O Insurers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. For the avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with Marqeta, or one of the Individual Defendants. *Id.*

[13] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement‑only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

1975), *cert. denied*, 429 U.S. 816 (1976).[14]

**A. The Settlement Class Is Sufficiently Numerous**

For numerosity purposes, "classes of forty or more are considered sufficiently numerous." *In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises, among others, purchasers of Marqeta Common Stock, which traded on the NASDAQ during the Settlement Class Period. There are likely thousands of Settlement Class members. Thus, the Settlement Class satisfies numerosity.

**B. Common Questions of Law Or Fact Exist**

In order to maintain a class action, there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Id*. Indeed, this factor is "construed permissively, and the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. (cleaned up).

This case involves several common questions of law and fact, including whether: (1) Defendants made materially false or misleading public statements during the Settlement Class Period; (2) Defendants acted with scienter; (3) Defendants' alleged false and misleading statements artificially inflated the market price of Marqeta Common Stock during the Settlement Class Period; and (4) Settlement Class Members were damaged by Defendants' alleged false and misleading statements. Commonality is satisfied even though the amount to which each class member is entitled will differ. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *In re*

[14] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.").

*Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)").

**C. Plaintiff's Claims Are Typical of Those of the Settlement Class**

"[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *7 (C.D. Cal. May 11, 2017). Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Here, Plaintiff purchased Marqeta Common Stock during the Settlement Class Period and alleges that he suffered significant losses as a result thereof. *See* ECF Nos. 21-1, 21-2; 47 at ¶24. There is no indication that Plaintiff's claims are atypical of those of the Settlement Class, or that unique defenses apply to Plaintiff's claims. *See Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *4-5 (C.D. Cal. Aug. 27, 2010). Thus, Plaintiff satisfies the typicality requirement. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

**D. Plaintiff and Lead Counsel Adequately Represent the Settlement Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." As explained in Sec. V.A.1., *supra*, the requirements of Rule 23(a)(4) are met.

**E. The Predominance and Superiority Requirements Are Satisfied**

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, common questions predominate—for example, whether Defendants' statements were materially misleading, and whether Defendants acted with scienter. Such questions predominate over individual issues such as the computation of Settlement Class Members' losses, which will be efficiently handled through the claims administration process. *See Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20,

1991) (finding that common issues relating to defendants' alleged misrepresentations predominate even though "[i]n securities claims it is common for the representative's personal claims to differ from the claims of the other class members in such matters as dates of purchase and sale, size of transaction, sophistication of investors and degree of reliance"). A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because damages suffered by most Settlement Class Members would not be sufficient to make it economical to prosecute separate actions. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Counsel also seek preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice that will be posted on the Settlement website. *See* Exhibit A-1 to the Stipulation ("Notice") at ¶¶54-82. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "To meet this standard, a plan of allocation recommended by experienced and competent class counsel need only have a reasonable and rational basis." *Stable Road*, 2024 WL 3643393, at *10.

The proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Claim Form. The Plan of Allocation was developed by Lead Counsel, with the assistance of a consulting damages expert, and reflects an assessment of damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action. In developing the Plan of Allocation, Plaintiff's expert calculated the estimated amount of artificial inflation in the per-share closing price of Marqeta's Common Stock that was allegedly caused by Defendants' alleged false and misleading statements. *See* Notice ¶56. In so doing, she considered the price changes in Marqeta's Common Stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentation and adjusted for market and industry factors. *Id.*

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase,

acquisition and sale of a Marqeta Security during the Settlement Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. For a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, the Marqeta Common Stock and/or Marqeta Call Options must have been purchased during the Settlement Class Period and held through the close of the U.S. financial markets on November 4, 2024 (the "Corrective Disclosure Date"). With respect to Marqeta Put Options, those options must have been sold (written) during the Settlement Class Period and still outstanding at the close of trading on November 4, 2024. *Id.* at ¶57. The calculation of Recognized Loss Amounts will depend upon several factors, including when the securities were purchased, acquired and sold and the purchase and sales price.

In general, Recognized Loss Amounts with respect to Marqeta Common Stock will be the lower of: (i) the estimated artificial inflation on the date of purchase ($2.67); (ii) the difference between the actual purchase price and sales price; or (iii) the difference between the purchase price and 90-day average price following the end of the class period (*i.e.*, the "90-Day Lookback Period" provided for by the PSLRA). Notice ¶62. For shares sold after the 90-Day Lookback Period, the Plan limits Recognized Loss Amounts to the lesser of: (i) the estimated artificial inflation on the date of purchase; or (ii) the purchase price *minus* the average closing price for Marqeta Common Stock during the 90-Day Lookback Period, which is $3.84. Notice ¶62. The Recognized Loss Amount for each Marqeta Call Option purchased or otherwise acquired during the Settlement Class Period and held at the close of trading on November 4, 2024, is equal to: the purchase price *minus* the intrinsic value of the option as of the close of trading on November 5, 2024, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) $3.42[15] *minus* the strike price of the option. *Id*. at ¶63. The Recognized Loss Amount for each Marqeta Put Options written during the Settlement Class Period and still open or outstanding at the close of trading on November 4, 2024, is equal to: the intrinsic value of the option as of the close of trading on November 5, 2024 *minus* the sale price, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) the strike price of the option *minus* $3.42. *Id*. at ¶64. The sum of a Claimant's Recognized Loss Amounts for all Settlement Class

[15] $3.42 is the closing price of Marqeta Common Stock on November 5, 2024.

Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶¶68-69.[16]

One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. Moreover, if any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost-effective. Notice ¶80. The Krajcer Declaration also identifies the Public Justice Foundation as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed. *See* ¶42; *see also* N.D. Cal. Guid. at ¶8. The Public Justice Foundation is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action, and this Court, as well as others in this Circuit, have approved it as a *cy pres* recipient in similar actions, including *In re FibroGen, Inc., Sec. Litig.*, 2025 WL 3526822, at *5 (N.D. Cal. Dec. 9, 2025); and *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924929, at *2 (C.D. Cal. March 24, 2025). Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims. *See Yaron v. Intersect ENT, Inc.*, 2021 WL 5150052, at *1 (N.D. Cal. Nov. 5, 2021) (approving substantially similar plan of allocation); *Stable Road*, 2024 WL 3643393, at *10-11 (same).

## VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA

### A. Retention of Epiq Global

Plaintiff proposes that the notice and claims process be administered by Epiq Class Action & Claims Solutions, Inc. ("Epiq"**)**, an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. Ex. 3 (Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl.")) at ¶¶5-6, Attachment A. Epiq was

[16] Marqeta Call and Put Option trading accounted for approximately 1.0% of total dollar trading volume for Marqeta Securities during the Settlement Class Period. Consequently, claims for Marqeta Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation.

selected after a competitive bidding process in which three firms submitted proposals to be selected as administrator, and Epiq was the low bidder. Each proposal involved comparable methods of providing notice and claims processing, including use of first-class mail, email, and identifying potential Settlement Class Members through brokers and nominee owners. ¶¶48-49. Lead Counsel has engaged Epiq to serve as settlement administrator in several other cases in the past two years and found Epiq to be a reliable administrator for these types of cases. ¶50.

**B. The Method of Notice is Adequate**

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation), and/or to email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice and the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail or email copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).[17]

---

[17] *See Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available

### C. The Content of Notice is Adequate

Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice. *See* Exhibits A-1 and A-3 to the Stipulation. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1)(A), the Notice apprises all Settlement Class Members of the nature of the Action, the definition of the Settlement Class, the claims, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id.*

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Guid. at ¶3. The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and Litigation Expenses.[18] *See* FED. R. CIV. P. 23(e)(5).

---

online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

[18] The Parties also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq*. ("CAFA"). *See* Stipulation ¶58; *see also* N.D. Cal. Guid. at ¶10.

### D. Claims Processing

The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to Epiq. Epiq will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

Epiq estimates that a total of 110,000 copies of the Postcard Notice will be mailed, that approximately 38,500 Claims will be received (a 35% response rate is estimated), and that Epiq will disseminate 23,100 payments. Azari Decl., ¶34. These estimates are based on the experience of Epiq and Lead Counsel in comparable securities class action settlements.

### E. Estimated Notice and Administrative Costs

Epiq's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the Settlement website, and establishing and operating the toll-free telephone helpline). Because the costs are dependent on, *inter alia*, how many copies of the Postcard Notice are ultimately mailed and Notice and Claim Forms emailed, and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the above estimates, Epiq estimates that the total Notice and Administration Costs for the Action will be approximately $165,000 - $175,000. These costs are necessary in order to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated administrative costs represent 1.3% of the Settlement Amount). Azari Decl., ¶¶36-37. The Notice and Administration Costs will be paid from the Settlement Amount. *See* Stipulation ¶14.

## VIII. ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES

As explained in the Notice and Postcard Notice, Lead Counsel intends to seek an award of attorneys' fees of up to 33⅓% of the Settlement Fund (*i.e.*, one-third of the Settlement Amount, or $4,329,000, plus interest earned thereon at the same rate as the Settlement Fund), and payment of

Litigation Expenses not to exceed $85,000. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 56 days before the Settlement Hearing. However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel respectfully submits that the fee Lead Counsel will request is within the range of reasonableness.

In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989), the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d 1036, 1047; *see also In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit."); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'") (*citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "This is particularly true in securities class actions such as this." *In re American Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014); *see also In re Pac. Enters.*, 47 F.3d at 379 (affirming a 33% attorneys' fees award in a case where the settlement fund was $12 million); *In re Mego Fin. Corp.*, 213 F.3d at 463 (affirming award of

one-third of the total recovery). Accordingly, an attorneys' fee request of one-third of the Settlement Fund would be fair and reasonable.

A lodestar cross-check confirms the reasonableness of the request. The requested fee will represent a multiplier of 2.19 on counsel's lodestar. ¶65. Such a multiplier is below the range of multipliers commonly awarded in class actions and other similar cases.[19] *See, e.g.*, *Hefler*, 2018 WL 6619983, at *14 (3.22 multiplier); *In re Apple Inc. Sec. Litig.*, 2024 WL 4246282, at *6 (N.D. Cal. Sept. 18, 2024) (3.88 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (approving 3.66 multiplier), *aff'd*, 2019 WL 1752610 (9th Cir. Apr. 17, 2019).

Lead Counsel also intend to seek reimbursement of Litigation Expenses not to exceed $85,000, which includes costs for the investigator who assisted with Lead Counsel's fact investigation, mediation fees, and expert fees. ¶66. As part of this request, Lead Counsel intends to seek an award for Plaintiff, pursuant to the PSLRA (15 U.S.C. §78u-4(a)(4)), in an amount not to exceed $5,000. ¶67. Lead Counsel believe this amount is fully supported by the work that Plaintiff performed throughout the Action, which will be presented to the Court in connection with Plaintiff's request for reimbursement. *See id.*; *see also* N.D. Cal. Proc. Guid. ¶7.

## IX. CONCLUSION

Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. As this motion is unopposed, Plaintiff respectfully requests that the Court consider this motion for preliminary approval on the papers.[20]

---

[19] Lead Counsel will present a more detailed statement of Lead Counsel's total lodestar in connection with its attorneys' fee application.

[20] A proposed timeline of procedural events is set forth in paragraph 72 of the Krajcer Declaration.

Dated: June 18, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: *s/ Jason L. Kracjer*

Robert V. Prongay
Jason L. Krajcer
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
jkrajcer@glancylaw.com
cfallon@glancylaw.com

*Counsel for Lead Plaintiff Tyler Hogge and Lead Counsel for the Proposed Settlement Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On June 18, 2026, I served true and correct copies of the foregoing document, by posted the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 18, 2026, at Los Angeles, California.

*s/ Jason L. Kracjer*
Jason L. Kracjer