**GLANCY PRONGAY WOLKE & ROTTER LLP**
ROBERT V. PRONGAY (#270796)
JASON L. KRAJCER (#234235)
CHRISTOPHER R. FALLON (#235684)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
jkrajcer@glancylaw.com
cfallon@glancylaw.com

*Lead Counsel for Lead Plaintiff Tyler Hogge and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE MARQETA, INC. SECURITIES LITIGATION | Civil Action No. 4:24-cv-08874-YGR<br><br>**DECLARATION OF JASON L. KRAJCER IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: July 28, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS


I. HISTORY AND BACKGROUND OF THE LITIGATION .... 1

II. INFORMATION ABOUT THE SETTLEMENT .... 4

- A. Settlement Class Definition .... 4
- B. The Releases .... 6
- C. The Anticipated Recovery Under the Settlement .... 7
- D. Other Cases Affected by the Settlement .... 9
- E. The Proposed Plan of Allocation of the Settlement Fund .... 9
- F. Estimate of Claims Rate .... 13
- G. There Will Be No Reversion to the Defendant .... 13

III. SETTLEMENT ADMINISTRATION SELECTION PROCESS .... 13

IV. THE NOTICE PROGRAM .... 15

- A. The Notice Distribution Plan .... 15
- B. The Contents Of The Notice Are Adequate .... 16

V. OPT-OUTS .... 17

VI. OBJECTIONS .... 17

VII. ATTORNEYS' FEES AND LITIGATION EXPENSES .... 18

VIII. PLAINTIFF'S REQUEST FOR REIMBURSEMENT UNDER THE PSLRA .... 18

IX. *CY PRES* AWARD .... 19

X. TIMELINE .... 19

XI. PAST DISTRIBUTIONS .... 20

I, Jason L. Krajcer, declare as follows:

1. I am an attorney admitted to practice before this Court and a partner with the law firm of Glancy Prongay Wolke & Rotter LLP ("GPWR" or "Lead Counsel"), counsel of record for Lead Plaintiff and Court-appointed Lead Counsel in the above-captioned action (the "Action").[1] I make this declaration, together with the attached exhibits, in support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the matters stated herein, and if called upon, I could and would testify competently thereto.

## I. HISTORY AND BACKGROUND OF THE LITIGATION

2. On December 9, 2024, a class action complaint was filed in the United States District Court for the Northern District of California (the "Court"), styled *Wilson Wai v. Marqeta, Inc., et al.*, 4:24-cv-08874-YGR ("*Wai*"). ECF No. 1. The complaint alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act") against defendants Marqeta, Inc. ("Marqeta" or the "Company"), Simon Khalaf ("Khalaf"), and Michael Milotich ("Milotich").

3. On December 10, 2024, a substantially similar class action complaint was filed in the United States District Court for the Northern District of California, styled *Ford v. Marqeta, Inc. et al.*, Case No. 4:24-cv-08892-YGR ("*Ford*").

4. On February 7, 2025, Tyler Hogge and three other movants filed motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to be appointed lead plaintiff in the Action. ECF Nos. 17, 20, 24, 27.

5. On March 11, 2025, the Court granted Mr. Hogge's motion. The Court consolidated *Wai* and *Ford* and recaptioned the consolidated action as *In re Marqeta, Inc. Securities Litigation*, Case No. 24-cv-08874-YGR, appointed Mr. Hogge to serve as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP to serve as Lead Counsel.[2] ECF No. 38.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 17, 2026 (the "Stipulation"). A true and correct copy of the Stipulation is attached hereto as Exhibit 1.

[2] In January 2026, Glancy Prongay & Murray LLP changed its name to Glancy Prongay Wolke & Rotter LLP ("GPWR"). *See* ECF No. 65. GPWR's firm résumé is attached hereto as Exhibit 4.

6. Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into the defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Marqeta's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, research reports prepared by securities and financial analysts, and news articles concerning Marqeta and regulatory scrutiny of the fintech industry and banks that service the fintech industry, (c) Marqeta's investor call transcripts, press releases and other public statements made by the Defendants prior to, during, and after the Settlement Class Period, and (d) other publicly available material related to Marqeta and regulatory scrutiny of the fintech industry and banks that service the fintech industry; and (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information. Lead Counsel also consulted with a damages and loss causation expert.

7. On April 10, 2025, Lead Plaintiff filed his 86-page (207-paragraph) Amended Complaint (the "Complaint"). The Complaint asserted claims against (i) all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (ii) Defendants Khalaf and Milotich under Section 20(a) of the Exchange Act. ECF No. 47. Among other things, the Complaint alleged that Defendants materially misled investors regarding Marqeta's speed of operations and improvements in the time it took to launch new programs. The Complaint further alleged that the price of Marqeta's publicly traded Class A common stock was artificially inflated during the putative class period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed. Defendants deny those allegations and claims. *Id.*

8. Defendants moved to dismiss the Complaint on May 15, 2025, (ECF No. 51), Plaintiff filed his opposition brief on June 20, 2025 (ECF No. 55), and Defendants filed their reply on July 11, 2025. ECF No. 59.

9. In an effort to preserve the Parties' resources, on September 2, 2025, the Parties filed a stipulation to continue the hearing on the motion to dismiss to January 13, 2026 or some date thereafter given that the Parties had agreed to participate in a mediation in an attempt to resolve the

Action. The Court entered the proposed order that same day. ECF Nos. 61-62.

10. On November 3, 2025, the Parties participated in a full-day in person mediation session with Robert A. Meyer of JAMS (the "Mediator"), a highly experienced mediator of complex actions. In advance of the mediation, the Parties each submitted and exchanged detailed mediation statements outlining their respective analyses of the claims and defenses in this case. The full-day mediation session began with each of Parties having full and frank discussions concerning the merits of this Action with the Mediator. Thereafter, during the negotiation process, the Parties fully vetted the strengths and weaknesses of their respective claims and defenses. The mediation culminated in Mr. Meyer making a mediator's recommendation to resolve the Action for $13,000,000 in cash for the benefit of the Settlement Class (the "Mediator's Proposal"), which the Parties accepted.

11. The agreement in principle to settle the Action was memorialized in a term sheet dated November 3, 2025 (the "Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants in the amount of $13,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplated the execution of a customary "long form" stipulation and agreement of settlement and related papers.

12. After informing the Court that the Parties had entered the Term Sheet (ECF No. 63), on December 4, 2025, the Court entered an Order regarding the pending motion to dismiss, deeming it withdrawn without prejudice if the settlement was not finalized. ECF No. 64.

13. As provided for in the Term Sheet, and as a condition of the Settlement, Defendants agreed to a due diligence discovery process to enable Plaintiff to evaluate representations made during the mediation process and to further assess the fairness, reasonableness, and adequacy of the proposed settlement. On December 3, 2025, the Parties entered into a stipulation providing for, *inter alia*, the confidential treatment of the discovery materials to be produced by Defendants, and the use of such materials only in the context of this settlement. From December 3, 2025 to January 2, 2026, Defendants produced nearly 12,000 pages of documents concerning the matters at issue in the Complaint. On March 10, 2026, Defendants made available a senior Marqeta employee for an interview with Lead Counsel to discuss the subjects at issue in the Action. After evaluating the

discovery produced, Lead Counsel concluded that it supports the fairness, reasonableness, and adequacy of the Settlement.

14. On June 17, 2026, the Parties executed the Stipulation. Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
|---|---|
| A | Preliminary Approval Order |
| A-1 | Long Notice ("Notice") |
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| A-4 | Postcard Notice |
| B | Final Judgment and Order |

## II. INFORMATION ABOUT THE SETTLEMENT

### A. Settlement Class Definition

15. Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: "all persons and entities that purchased or otherwise acquired the publicly traded Class A common stock of Marqeta, Inc. ("Marqeta Common Stock"), and/or purchased or otherwise acquired publicly traded call options on such stock ("Marqeta Call Options"), and/or wrote publicly traded put options on such stock ("Marqeta Put Options"), between February 28, 2024 and November 4, 2024, both dates inclusive, and who were damaged thereby." Stipulation, ¶1(ww).

16. Excluded from the Settlement Class are:

> (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer, and/or director of Marqeta during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Marqeta; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' D&O Insurers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the

> Settlement Class that is accepted by the Court. For the avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with Marqeta, or one of the Individual Defendants.

*Id.*

17. The differences between the class initially proposed in the Complaint and the proposed Settlement Class are that the Stipulation: (i) clarifies and specifies that the Marqeta securities subject to the Settlement includes only publicly traded Marqeta Class A common stock traded on the NASDAQ under the symbol "MQ," and publicly traded put and call options on Marqeta Common Stock; and (ii) provides greater detail concerning persons and entities that are excluded from the class, including (a) those persons and entities that suffered no compensable losses; (b) persons who submit a request for exclusion from the Settlement Class; (c) any trust of which Defendants is the settlor or which is for the benefit of the Defendants and/or member(s) of his Immediate Family; (d) Defendants' D&O insurers; (e) in addition to officers and directors of the Company, any person who served as a partner or control person of Marqeta and members of their immediate families; and (f) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Marqeta.

18. In the Complaint, the term "Marqeta securities" was not specifically defined. *See* ECF No. 47 at ¶1. Clarifying and specifying which Marqeta securities are subject to the Settlement is appropriate as it makes clear that non-publicly traded Marqeta securities are not part of the Settlement. The Complaint also did not specifically exclude persons and entities that suffered no compensable losses or persons who submit a request for exclusion from the Settlement Class. This limitation will also aid in the orderly administration of the Settlement as it will ensure only investors who were damaged and who wish to be part of the Settlement Class receive compensation. In addition, adding to those excluded (i) any trust of which Defendants is the settlor or which is for the benefit of the Defendants and/or member(s) of his Immediate Family; (ii) Defendants' D&O insurers; (iii) any person who served as a partner or control person of Marqeta and members of their immediate families; and (iv) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Marqeta assures that the Defendants do not benefit from the Settlement.

**B. The Releases**

19. Under the terms of the proposed Settlement, the Parties have agreed that Plaintiff and each of the other Settlement Class Members shall waive and release each and every Released Plaintiff's Claim against the Defendants and the other Released Defendants' Parties in exchange for a payment by or on behalf of Defendant of $13,000,000 in cash. *See* Stipulation, ¶8. The Releases are set forth in in paragraphs 5 and 6 of the Stipulation.

20. Released Plaintiff's Claims are defined in the Stipulation (*see* Stipulation, ¶1(qq)) as "all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiff or any other member of the Settlement Class: (i) asserted in the operative Complaint (ECF No. 47); or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters, events or occurrences, representations or omissions set forth, or referred to, in the operative Complaint and that relate to the purchase, acquisition or sale of Marqeta Securities during the Settlement Class Period.[3] Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any derivative claims, including those asserted in the following action: *In re Marqeta, Inc. Derivative Litig.*, 4:25-cv-01174-YGR (Consolidated) (N.D. Cal.); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court."

21. Released Defendants' Parties" means "(i) Defendants; (ii) the Immediate Family members of the Individual Defendants; (iii) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his or her Immediate Family members; (iv) for any of the entities listed in parts (i) through (iii), their respective past and present general partners, limited partners, principals, controlling shareholders, joint venturers, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, parents, predecessors, successors, subsidiaries, assigns, heirs, executors, and any controlling person thereof; and (v) any

---

[3] In the Stipulation, "Marqeta Securities" is defined as, collectively, Marqeta Common Stock, Marqeta Call Options, and Marqeta Put Options. Stipulation, ¶1(dd).

entity in which a Defendant has a controlling interest; all in their capacities as such." Stipulation, ¶1(pp).

22. The scope of this release is reasonable as it is limited to claims that Plaintiff or any other member of the Settlement Class: (a) asserted in the operative Complaint (ECF No. 47); or (b) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters, events or occurrences, representations or omissions set forth, or referred to, in the operative Complaint and that relate to the purchase, acquisition or sale of Marqeta Securities during the Settlement Class Period. While this release includes claims not alleged in the Complaint, the release of these additional claims, including Unknown Claims and other claims that "could have [been] asserted" in this Action, the release of such claims is appropriate because all released claims are based on the "identical factual predicate" of the claims asserted in this Action. The proposed Settlement does not release (a) any claims relating to the enforcement of the Settlement; (b) any derivative claims, including those asserted in the following action: *In re Marqeta, Inc. Derivative Litig.*, 4:25-cv-01174-YGR (Consolidated) (N.D. Cal.); and (c) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court. Stipulation, ¶1(qq).

**C. The Anticipated Recovery Under the Settlement**

23. The $13 million cash Settlement Amount amounts to an estimated average recovery of approximately $0.14 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

24. The costs of the notice and claims administration (*see* ¶¶52-53, *infra*), is estimated to be approximately $165,000-175,000 (or $0.002 per damaged share). If Lead Counsel requests attorneys' fees of 33⅓% of the Settlement Fund and reimbursement of the maximum amount of Litigation Expenses listed in the Notice ($85,000) (*see* Sec. VII, *infra*), and the Court approves such request, the cost is estimated to be $0.05 per damaged share. After deduction of these fees, costs, and expenses, the estimated average recovery is approximately $0.09 per damaged share, pursuant to the proposed Plan of Allocation.

25. If Plaintiff had fully prevailed in his claims, certified the same class period as the Settlement Class, overcame summary judgment and completed a successful jury trial, and if the

Court and jury accepted Plaintiff's damages theory, including proof of loss causation as to the stock price drop alleged in this case (*i.e.*, Plaintiff's best-case scenario), estimated total maximum damages are approximately $235 million. If, however, Defendants had prevailed on an anticipated disaggregation argument with respect to the one alleged disclosure date, Plaintiff estimates that ***maximum*** recoverable damages would drop to between $150-180 million. Thus, the $13 million Settlement Amount represents a recovery in the range of 5.5-8.7% of maximum damages.

26. Lead Plaintiff's decision to accept the Mediator's Proposal was informed by, *inter alia*:

- Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action;
- Lead Counsel's work and research in opposing Defendants' motion to dismiss;
- Lead Counsel's consultation with a damages and loss causation expert;
- Lead Counsel's discussions with Mr. Meyer concerning the strengths and weaknesses of Lead Plaintiff's case; and
- the due diligence discovery process.

27. As a result, Lead Plaintiff and his counsel had a very good of understanding of the strengths and weaknesses of the Settlement Class's claims. Prevailing on the fully briefed motion to dismiss was not guaranteed, especially given the PSLRA's heightened pleading standard and automatic stay of discovery. In addition, proving these claims would be extremely tough, and would require Lead Plaintiff to demonstrate, among other things, that the statements were material and that they were made with scienter. This would not be an easy task; rather, it would be subject to numerous risks and obstacles, including adverse testimony from the Defendants, a lack of suspicious stock sales by the Defendants during the Settlement Class Period, and the complicated nature of the alleged fraud. Moreover, even if Lead Plaintiff could marshal the evidence to prove liability, he would still need to prove loss causation and damages through expert testimony, which would certainly be contested by Defendants' own expert(s). Simply put, this was an extremely complex case, and success was far from a *fait accompli*.

28. In the light of these risks, and many others, Lead Counsel believes that the percentage of recovery is reasonable under the circumstances. Indeed, it is more than twice the median percentage recovery in securities class actions with similar damages that have settled in the last ten years. *See* Exhibit 2 hereto (excerpts from Edward Flores, Svetlana Starykh, and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation, 2025 Full-Year Review* (NERA, Jan. 21, 2026)) ("NERA Report"), at 27 (Fig. 23)) (median recovery for securities class actions that settled in the last ten years was 2.7% for cases with estimated damages between $200-$399 million, and 3.2% for cases with estimated damages between $100-$199 million).

**D. Other Cases Affected by the Settlement**

29. There are no other cases that will be affected by the Settlement.

**E. The Proposed Plan of Allocation of the Settlement Fund**

30. The proposed Plan of Allocation is detailed in the long-form Notice. *See* Ex. 1(A-1) (Notice), at ¶¶54-82. The Notice will be posted online at www.MarqetaSecuritiesSettlement.com, is downloadable, and will be mailed or emailed to Settlement Class Members upon request. For Settlement Class Members whose email addresses are provided to the Claims Administrator by brokers and other nominees, the Notice and Claim Form ("Notice Packet") will be emailed.

31. If approved, the Plan of Allocation will govern how the Net Settlement Fund (*i.e.*, the $13,000,000 Settlement Amount, plus any and all interest earned thereon, less: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court) will be distributed among Authorized Claimants. The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged wrongdoing as opposed to losses caused by market or industry-wide factors or Company-specific factors unrelated to the alleged wrongdoing. *See id.* at ¶56. As stated in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of

Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. *Id.* at ¶¶54-55.

32. The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action. The Plan of Allocation further reflects, and is based on, Plaintiff's allegation that the price of Marqeta Common Stock was artificially inflated during the period from February 28, 2024 through and including November 4, 2024, due to Defendants' alleged materially false and misleading statements and omissions. *Id.* at ¶56.

33. The Plan of Allocation is based on the premise that the decrease in the price of Marqeta Common Stock, net of price movements attributable to market- and industry-wide factors, that occurred after the close of the U.S. financial markets on November 4, 2024 (the "Corrective Disclosure Date") removed the artificial inflation from the price of Marqeta common stock and may be used to measure the alleged artificial inflation in the price of Marqeta Class A common stock prior to the Corrective Disclosure Date. *See id.* at ¶¶56-57.

34. For a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, the Marqueta Common Stock and/or Marqeta Call Options must have been purchased during the Settlement Class Period and held through the Corrective Disclosure Date. With respect to Marqeta Put Options, those options must have been sold (written) during the Settlement Class Period and still outstanding at the close of trading on November 4, 2024. *Id.* at ¶57.

35. In general, Recognized Loss Amounts with respect to Marqeta Common Stock will be the lower of: (i) the estimated artificial inflation on the date of purchase ($2.67); (ii) the difference between the actual purchase price and sales price; or (iii) the difference between the purchase price and 90-day average price following the end of the class period (*i.e.*, the "90-Day Lookback Period" provided for by the PSLRA (15 U.S.C. § 78u-4(e)(1)). *Id.* at ¶62. For shares sold after the 90-Day Lookback Period, the Plan limits Recognized Loss Amounts to the lesser of: (i) the estimated artificial inflation on the date of purchase; or (ii) the purchase price *minus* the average closing price for Marqeta common stock during the 90-Day Lookback Period, which is $3.84. *Id.*

36. With respect to Marqeta Call Options, the Recognized Loss Amount for each Marqeta Call Option purchased or otherwise acquired during the Settlement Class Period and held at the close of trading on November 4, 2024, the Recognized Loss Amount is equal to: the purchase price *minus* the intrinsic value of the option as of the close of trading on November 5, 2024, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) $3.42[4] *minus* the strike price of the option. *Id*. at ¶63.

37. With respect to Marqeta Put Options, the Recognized Loss Amount for each Marqeta Put Option written during the Settlement Class Period and still open or outstanding at the close of trading on November 4, 2024, the Recognized Loss Amount is equal to: the intrinsic value of the option as of the close of trading on November 5, 2024 *minus* the sale price, where the intrinsic value shall be *the greater of*: (i) $0.00 or (ii) the strike price of the option *minus* $3.42. *Id*. at ¶64.

38. Settlement proceeds available for Marqeta Call Options purchased during the Settlement Class Period and Marqeta Put Options written during the Settlement Class Period shall be limited to a total amount equal to 1.0% of the Net Settlement Fund.[5]

39. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* at ¶69.

40. An individual Claimant's recovery under the Plan of Allocation will depend on several factors, including when and at what prices they purchased, acquired and/or sold their Marqeta Securities, and the total number of valid Claim Forms submitted. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Marqeta Securities during

---

[4] $3.42 is the closing price of Marqeta Common Stock on November 5, 2024.

[5] Marqeta Call and Put Option trading accounted for approximately 1.0% of total dollar trading volume for Marqeta Securities during the Settlement Class Period. Consequently, claims for Marqeta Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation.

the Settlement Class Period, or if the Marqeta Securities were not held through the alleged Corrective Disclosure Date, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. *Id.* at ¶¶57, 77-79.

41. If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. *Id.* at ¶69. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. *Id.* In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost-prohibitive. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost-effective. *Id.* at ¶80.

42. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court. *Id.* Lead Counsel anticipates that in such circumstance it will seek the Court's approval to distribute any remaining amount of the Net Settlement Fund to the Public Justice Foundation, a 501(c)(3) non-profit charitable public foundation dedicated to advancing the public interest, which undertakes many activities to advocate for investors harmed by public companies' misleading statements and has received numerous *cy pres* designations from securities related cases. *See, e.g.*, *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2025 WL 924929, at *2 (C.D. Cal. Mar. 24, 2025) ("the remaining funds will be donated to the Public Justice Foundation, a non-sectarian, not-for-profit 501(c)(3) organization dedicated to, among other things, investor education and advocacy"); *In re XL Fleet Corp. Sec. Litig.*, 2025 WL 2602616, at *2 (S.D.N.Y. Sept. 4, 2025) (similar); *Rodriguez v. Alfi, Inc.*, 2025 WL 2046444, at *2 (S.D. Fla. July 22, 2025) (similar).

43. In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Marqeta Securities that were attributable to the conduct alleged in the Complaint. Accordingly,

Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

**F. Estimate of Claims Rate**

44. Lead Plaintiff is proposing Epiq Global ("Epiq" or the "Claims Administrator") to serve as the Claims Administrator in the Action.[6] As more fully explained in the Azari Declaration, Epiq estimates that the Postcard Notice will be mailed, or an link to the Notice Packet emailed, to approximately 110,000 potential Settlement Class Members. *See* Azari Decl., ¶34.

45. Epic also estimates a claims rate of 35%, and would, therefore, expect to receive approximately 38,500 Claims. *Id.*

**G. There Will Be No Reversion to the Defendant**

46. The Settlement is non-reversionary. Under the terms of the Stipulation, no portion of the Settlement Amount will revert to the Defendants or the D&O carriers once the Effective Date occurs, regardless of the number of claims made. *See* Stipulation, ¶13.

## III. SETTLEMENT ADMINISTRATION SELECTION PROCESS

47. Lead Counsel retained Epiq, subject to Court approval, in order to: (i) provide notice of the proposed Settlement to the Settlement Class; and (ii) administer the claims process.

48. Prior to retaining Epiq, Lead Counsel solicited requests for proposals for notice and administration of the Settlement from three experienced and respected settlement administrators. Lead Counsel carefully compared the submitted proposals, taking into consideration each administrator's estimated cost to administer the entire Settlement, the cost of the notice program, and the cost of each processed Claim. Lead Counsel also considered certain fixed costs associated with the administration of the Settlement, such as the construction and maintenance of the settlement website. Epiq submitted the low bid.

49. Pursuant to Lead Counsel's request, the potential settlement administrators proposed notifying the Settlement Class by Postcard Notice and/or emailing the Notice and Claim Form.

---

[6] Epiq has served as the Claims Administrator in hundreds of class actions, including securities class actions in this district. *See* Attachment A to the Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl." or "Azari Declaration"), which is attached hereto as Exhibit 3.

Settlement Class Members may also request to have the Notice and Claim Form mailed to them. Payment will be by paper check or wire.

50. In the past two years, Epiq has administered, or is administering, the following settlements in which GPWR (or its predecessor Glancy Prongay & Murray LLP) served as lead or co-lead counsel:

| Case | Case No. and Court |
|---|---|
| *Spirit AeroSystems Sec. Litig.* | 1:23-cv-03722 (S.D.N.Y.) |
| *In re Eros international PLC Sec. Litig.* | 19-cv-14125 (D.N.J.) |
| *Shen v. Exela Tech., Inc.* | 3:20-cv-00691 (N.D. Tex.) |
| *In re Romeo Power Inc. Sec. Litig.* | 1:21-cv-03362 (S.D.N.Y.) |
| *In re Reconnaissance Energy Africa Ltd. Sec. Litig.* | 1:21-cv-06176 (E.D.N.Y.) |
| *In re Evolv Tech. Holdings Inc., Sec. Litig.* | 1:24-cv-10761 (D. Mass.) |
| *McNamara v. Wells Fargo & Co.* | 3:21-cv-01245 (S.D. Cal.) |

51. Epiq's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Notice Packet, publishing Summary Notice, establishing and maintaining the settlement website (www.MarqetaSecuritiesSettlement.com; "Settlement Website"), and establishing and operating the toll-free telephone line).

52. At this time, Epiq estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs administering the notice, processing Claims, and distributing the Net Settlement Fund, among others, will generate professional services fees and expenses of approximately $165,000-175,000, excluding broker/nominee charges. *See* Azari Decl., ¶36.

53. These costs are necessary to effectuate the Settlement, and at approximately 1.3% of the total Settlement Amount, or $0.002 per damaged share, are reasonable in relation to the value of the Settlement. *Id.* at ¶37. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. Stipulation, ¶14.

## IV. THE NOTICE PROGRAM

### A. The Notice Distribution Plan

54. In accordance with the terms of the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Epiq will promptly either email a link to the Notice and Claim Form, or mail the Postcard Notice, to all Settlement Class Members who can be identified through reasonable effort. Epiq will also contact brokerage firms and other nominees who regularly act as nominees for beneficial purchasers/sellers of securities to inform them of their obligation to either: (i) provide the names, addresses and, to the extent available, email addresses, of their clients who may be Settlement Class Members to Epiq; or (ii) request copies of the Postcard Notice or an email link to the Notice and Claim Form so that they can provide notice directly to their customers and clients. Nominees that choose to follow procedure (ii) shall also send a statement to Epiq confirming that the mailing or emailing was made as directed. As explained above, in consultation with the Claims Administrator, Lead Counsel estimates that notice will be disseminated to approximately 110,000 Settlement Class Members. *See* Sec. II.F *supra*; Azari Decl. at ¶34.

55. Contemporaneously with the mailing/emailing of notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form on the Settlement Website. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

56. Additionally, no more than ten (10) business days after notice is mailed/emailed, the Summary Notice will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

57. Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement. Significantly, with an estimated mailing to 110,000 shareholders, a full printed Notice and Claim Form (*i.e.*, the Notice Packet) sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount. Thus, Lead Counsel respectfully submits that the combination of the mailed/emailed notice, published Summary Notice, and online availability of the Notice provides the best notice that is practicable under the circumstances.

58. Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Yaron v. Intersect ENT, Inc. et al*, Case No. 4:19-cv-02647-JSW, ECF No. 67 at ¶8 (combination of postcard notice, publication and posting of full notice online was "the best notice practicable under the circumstances"); *Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *9 (N.D. Cal. Oct. 31, 2023) (finding that similar proposed notice process, with postcard notice was "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement."); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer action); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of postcard notices, summary notices, and a long form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

**B. The Contents Of The Notice Are Adequate**

59. As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, the notice program satisfies the requirements of Rule 23(c)(2) and the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), and does so in easily understandable language.

60. In addition, the notice program includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"): (i) the contact information for Lead Counsel to answer questions (*see* Notice, ¶¶6, 99; Summary Notice, p.2); (ii) the Settlement Website address (*see* Notice, (cover page, p.2 n.1, and ¶¶8, 25, 43, 82, 99, 100); Postcard Notice), which will be maintained by Epiq and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; (iii) instructions on how to access the case docket via PACER or in person using the

language suggested in item 3 of the preliminary approval Class Settlement Guidelines (*see* Notice, ¶99).

61. All blanks in the Notice, Claim Form, Summary Notice, and Postcard Notice will be filled in once the Court sets those dates and these documents are finalized prior to mailing and publication.

## V. OPT-OUTS

62. The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out. *See* Notice, ¶¶84-86, Summary Notice, p. 2, Postcard Notice. These instructions set forth the information needed to be properly identified and to opt out of the Settlement. *Id.* Specifically, each request for exclusion must: (a) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *In Re Marqeta, Inc. Securities Litigation*, Case No. 4:24-cv-08874-YGR"; and (c) be signed by the person or entity requesting exclusion or an authorized representative. Notice, ¶84. In addition, a request for exclusion must state the number and type of Marqeta Securities that the person or entity requesting exclusion purchased, acquired, wrote, and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale/writing. *Id.*

## VI. OBJECTIONS

63. The notice program also provides instructions for potential Settlement Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. *See* Notice, ¶¶90-96, Summary Notice, p. 2, Postcard Notice. The instructions in the Notice largely follow the Class Settlement Guidelines' suggested language. *Id.*

## VII. ATTORNEYS' FEES AND LITIGATION EXPENSES

64. For their efforts on behalf of the Settlement Class, Lead Counsel will be applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class. Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the $13 million dollar Settlement Fund (or up to $4,329,000, plus interest earned at the same rate as the Settlement Fund).

65. Lead Counsel's total lodestar through and including May 31, 2026, is approximately $1,973,700, consisting of $1,939,700 for 2,588 hours of attorney time and $34,000 for 88 hours of professional support staff time. The anticipated requested fee results in a multiplier of 2.19 to Lead Counsel's current total lodestar. Lead Counsel's current total lodestar also does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, working with the Claims Administrator, drafting the final approval and distribution motions, or preparing for and attending the final approval hearing.

66. Lead Counsel will also apply for reimbursement of out-of-pocket costs and expenses from the Settlement Fund an amount not to exceed $80,000. These expenses were incurred in connection with the institution, prosecution, and resolution of the Action, and include, *inter alia*, costs for the investigator who assisted with Lead Counsel's factual investigation, mediation fees, and expert fees.

## VIII. PLAINTIFF'S REQUEST FOR REIMBURSEMENT UNDER THE PSLRA

67. Lead Plaintiff will likely seek reimbursement, pursuant to 15 U.S.C. §78u-4(a)(4), of his reasonable costs and expenses (including lost wages) directly incurred in connection with his representation of the Settlement Class, in an amount not to exceed $5,000. Mr. Hogge was highly involved in each phase of the litigation and communicated frequently with Lead Counsel. Mr. Hogge took his role as Lead Plaintiff seriously, and, among other things: (i) regularly communicated with Lead Counsel regarding the posture and progress of the case; (ii) compiled and produced his trading records to his attorneys; (iii) reviewed the pleadings and briefs filed in the Action; (iv) reviewed Court Orders; (v) prepared for the mediation by, among other things, discussing with counsel the mediation strategy; (vi) made himself available during the mediation and consulted with

counsel regarding settlement negotiations; (vii) evaluated the Settlement Amount, conferred with counsel, and ultimately approved the Settlement; and (viii) communicated with counsel regarding the process of finalizing the Settlement.

## IX. *CY PRES* AWARD

68. Lead Counsel Lead Counsel proposes Public Justice Foundation as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

69. Here, 100% of the Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost-effective.

70. The Public Justice Foundation is a nonsectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy, and thus, is an appropriate *cy pres* recipient. *See Stein v. Eagle Bancorp, Inc. et al.*, No. 1:19-cv-06873-LGS, ECF No. 117 (S.D.N.Y. July 19, 2023) ("Applying that standard [that a *cy pres* designee must 'reasonably approximate' the interests of the class] here, Public Justice is an appropriate *cy pres* beneficiary, as it is a non-profit organization advocating on behalf of investors and consumers pursuing claims under federal and state securities laws."); *Yaron v. Intersect ENT, Inc., et al.*, No. 4:19-cv-02647-JSW, ECF No. 86, at ¶8 (N.D. Cal. April 10, 2023) (approving Public Justice Foundation as the *cy pres* beneficiary in a securities class action); *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 6458976, at *2 (S.D.N.Y. Oct. 4, 2023) (same); *Stable Rd.*, 2025 WL 924929, at *2 (same). In addition, the Parties and their counsel do not have any relationship with the Public Justice Foundation.

71. It should be noted, however, that due to the potential for multiple rounds of distributions as long as it is cost-effective, it is likely that only a small amount of the Net Settlement Fund will be directed to the Public Justice Foundation.

## X. TIMELINE

72. Lead Plaintiff respectfully proposes for the Court's consideration the following

schedule of events in connection with the Settlement Hearing, as stated in the proposed Preliminary Approval Order that was agreed to by the Parties and is filed herewith. If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date no earlier than one hundred and twenty (120) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date that the Preliminary Approval Order is entered on and the date that the Settlement Hearing is scheduled for.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶27) | Not later than 56 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶14, 18) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶27) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶11) | 90 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## XI. PAST DISTRIBUTIONS

73. The Procedural Guidance for Class Action Settlements requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements. The following chart represents the requested information for two other class action settlements for violations of the federal securities laws in which GPWR served as Lead Counsel:

| **Matter** | *Zaidi v. Adamas Pharmaceuticals, Inc. et al.*, Case No. 4:19-cv-08051-JSW (N.D. Cal.) | *Yaron v. Intersect, ENT, Inc., et al*, Case No.: 4:19-cv-02647-JSW (N.D. Cal) |
|---|---|---|
| **Total Settlement Fund (Prior to Interest Earned)** | $4,650,000.00 | $1,900,000 |
| **Method of Notice** | Postcard Notice, Publication, and Notice on Settlement Website | Postcard Notice, Publication, and Notice on Settlement Website |
| **Total Number of Sent Notices**[7] | 29,515 | 16,746 |
| **The Number of Claims Forms Submitted** | 12,169 | 9,254 |
| **Percentage of Claim Forms Submitted** | 41.23% | 55% |
| **The Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 4,132 | 6,087 |
| **Average Recovery per Claimant (Based on Number of Acceptable Claims Excluding $10 De Minimis Non-Payments)** | $1,856.71 | $883.97 |
| ***Cy Pres* Recipient** | Public Justice Foundation | Public Justice Foundation |
| **Amount Distributed to *Cy Pres* Recipient** | $3,374.49 | $18,585.44 |
| **Administrative Costs** | $172,712.45 | $125,395.77 |
| **Attorneys' Fees (Prior to Interest Component)** | $1,550,000 | $633,333 |
| **Litigation Expenses** | $78,227.23 | $88,929.16 |

[7] In a securities class action, like in these examples, the precise "total number of class members" is typically not known because the securities are widely traded and there is no definitive list of class members available to the Parties. Accordingly, notices are mailed to all potential class members who can be identified through reasonable efforts, including through requests to brokers and nominees to identify all potential class members.

74. I believe that the proposed Settlement before the Court is fair, reasonable, and adequate in light of the strengths and weaknesses of the asserted claims and that entering into the proposed Settlement is in the best interests of the Settlement Class.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on June 18, 2026 in Los Angeles, California.

*s/ Jason L. Krajcer*
Jason L. Krajcer

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On June 18, 2026, I served true and correct copies of the foregoing document, by posted the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 18, 2026, at Los Angeles, California.

*s/ Jason L. Kracjer*
Jason L. Krajcer